UNITED STATES (CROSS v.).   See Case No. 3,434.

## Case No. 14,895.

UNITED STATES v. CROW.

[1 Bond, 51.] [2]

Circuit Court, S. D. Ohio.   April Term. 1856.

LARCENY FROM MAIL — EVIDENCE — INCULPATING CIRCUMSTANCES—PROOF OF CHARACTER.

1. On the trial of an indictment for abstracting a letter or package from the mail, the most satisfactory evidence that it had been in the mail is that of the person who deposited it in the post-office; and of its loss, that of the person

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

to whom it was addressed, to the effect that it was never received by him.

2. In the absence of any direct testimony connecting the defendant with the violation of the mail, collateral circumstances tending to his inculpation are admissible in evidence to the jury.

3. Evidence having been introduced showing that a letter had been mailed at Carlisle, in the state of Pennsylvania, addressed to parties in Ohio, inclosing a draft or bill, the prosecution, for the purpose of proving that the draft or bill had been in the defendant's possession, and to raise the presumption that he had stolen it from the mail, offered in evidence a letter purporting to have been written and signed by Martin Smith, transmitting the draft or bill to a banker in Marietta, Ohio, to be cashed, and proposed to prove by a witness that said letter was in the handwriting of the defendant; and the witness stated that it was his impression and belief that the handwriting of the letter, including the signature of Martin Smith, was the proper handwriting of the defendant: but having sworn that he had seen the defendant write but once, and had no other means of knowing his handwriting, the court instructed the jury that the proof of the handwriting was not sufficient, and would not justify a verdict of guilty.

4. Proof of the previous good character of the defendant, and that without compulsion he sought an investigation of the charge is not only admissible, but should have weight with the jury if the evidence implicating him creates a reasonable doubt of his guilt.

[This was an indictment against Robert J. Crow, charging him with abstracting a letter from the United States mail.]

H. J. Jewett, U. S. Dist. Atty.
Johnson & Carroll, for defendant.

LEAVITT, District Judge (charging jury). The indictment against the defendant contains several distinct charges, one or more of which must be substantiated by the evidence to justify a verdict of guilty. The first, second, and third counts are for stealing letters and packages from the mail of the United States without any particular description or designation of them. The fourth count charges the stealing of a letter from the mail, which had been deposited in the post-office at Carlisle, in the state of Pennsylvania, written by R. M. Henderson, addressed to J. D. & J. Brown, Amesville, Ohio, which, it is averred, inclosed a draft in favor of said Browns, drawn by the cashier of a bank at Carlisle on one of the banks of Philadelphia. The fifth count charges the defendant with having fraudulently taken from the post-office, at Beverly, Ohio, a letter addressed to one Martin Smith. These several charges are based on different provisions of the laws of the United States, designed for the protection of the mails and the punishment of persons guilty of violating them. The case for the prosecution rests wholly on circumstantial evidence, which, it is insisted by the counsel for the government, must lead the jury to the conclusion that the defendant is guilty. It is proper here to remark, that to justify the conviction of the defendant the jury must be satisfied, not only that the mail has been violated, but that the let-

ters or packages, with the stealing of which the defendant is charged, had been in, and were taken from, the mail of the United States. The usual, and certainly the most satisfactory, evidence that a letter or package was put into the mail for transmission, is that of the person who deposited it in the post-office; and the best evidence of its loss is that of the person to whom the letter or package was addressed. In this case neither the person mailing the letter or package, nor the person to whom it was directed, has been called as a witness; and the jury are therefore to consider whether other circumstances in proof connect the defendant with the criminal acts charged.

It will not be necessary to recite at length the testimony of the witnesses for the prosecution, which it is claimed proves the guilt of the defendant. I will refer only to the more material facts relied upon for this purpose. The witness, Harvey Smith, says that about the 4th of May last he was informed that some letters and fragments of letters and envelopes had been found under a schoolhouse, in the village of Plymouth. Washington county, Ohio. Upon examination he found some mutilated letters, with envelopes and postmarks upon them. And he identifies some of these now presented to the jury as being the same that were found under the school-house. This evidence proves that there was a violation of the mail of the United States at the place mentioned, but there seems to be no proof directly implicating the defendant with such violation. It is insisted, however, that the evidence establishes the fact that the defendant was in possession of the draft or bill described in the fourth count of the indictment, and that until he shows that he came honestly into the possession he must be presumed to have stolen it from the mail. It will be for the jury to inquire and determine, first, whether the evidence sufficiently proves the fact of the possession of the draft by the defendant; and, secondly, whether, if in possession, he abstracted it from the mail. On the last point, I may as well remark here that, though the jury may have sufficient grounds for finding the fact of possession in the defendant, they must also be satisfied that it was feloniously stolen from the mail to constitute his guilt under this indictment. If he came, even feloniously, into the possession of the draft by other means than stealing it from the mail, the offense would be one cognizable in a state court, but of which this court has no jurisdiction.

It is an important inquiry for the jury, whether there is sufficient proof that the draft was in the possession of the defendant. For, it will be obvious, if the draft be proved to have been in his possession, in connection with the fact that it was inclosed in the letter from Carlisle, addressed to the Browns at Amesville and sent by mail, a prima facie case of guilt against the defendant would

seem to be made out. And it would be necessary for him to repel the presumption of guilt by proof that he obtained possession of the draft by other means than those charged in the indictment.

The evidence mainly relied on by the prosecution to show that the draft had been in defendant's possession, is that of George Benedict, who swears that on April 17, 1855, he took from the post-office at Marietta a letter addressed to him, purporting to be written by Martin Smith, dated the 14th of April, which contained the draft in question, with a request that Benedict would cash the draft and remit the proceeds to the writer. The envelope of this letter is produced to this witness, and he identifies it as being the same that covered the letter received from Smith. The postmark shows that it was mailed at Amesville. The witness, Benedict, swears that he remitted the proceeds of the draft in bank-notes, inclosed in a letter addressed to Martin Smith. He thinks there were two $50 notes on Wheeling banks, and that the rest was in Ohio notes.

It is insisted by the prosecution that the letter purporting to be written and signed by Martin Smith was written by the defendant, and is, therefore, conclusive evidence that the draft had been in his hands, and that he resorted to the trick of transmitting it to Benedict for the purpose of getting it cashed; under the feigned name of Martin Smith, that he might reap the proceeds of his crime without danger of detection. It is, therefore, a most important inquiry for the jury whether the defendant wrote the letter to Benedict under the name of Martin Smith. The only witness for the prosecution to show that this letter was in the handwriting of the defendant is Harvey Smith, who swears that it is his impression and belief that the letter is in the handwriting of the defendant. He does not swear positively on this subject; and on cross-examination the witness says he saw the defendant write but once, and that was at an election, where he wrote some tickets. The letter in question has been permitted to go to the jury, and they are to decide whether it was written by the defendant. It is the duty and the province of the court, however, to state the law on this subject to the jury. Now, it is undoubtedly true that proof of handwriting if often a most reliable species of evidence, and is admissible as such both in civil and criminal cases. But to entitle it to any consideration, the witness who testifies to the handwriting of another must have had adequate means of becoming acquainted with it, and must be able to swear to it with some degree of positiveness. He must have seen the person write frequently, or must otherwise have obtained a satisfactory knowledge of the character of his writing. It is not enough that he has seen the person, as is the proof in this case, write but once, and then under circumstances showing that the atten-

tion of the witness was not specially directed to the peculiarities of the penmanship. It would be dangerous, in a criminal case, to rely on such vague and unsatisfactory evidence as the basis of a verdict which will subject the accused to severe punishment and operate as a perpetual brand of infamy on his character.

If the jury are of the opinion that the letter inclosing the draft addressed to Benedict was not written by the defendant, or that the evidence as to that fact leaves it in doubt whether he was the writer, they will inquire whether there are other facts in proof which satisfactorily establish his guilt. Apart from the alleged possession of the draft, there is no evidence that the defendant has been in possession of anything which was taken from the mail. It is stated by one witness, Mr. Faris, that some short time after the receipt of the proceeds of the draft the defendant requested him to change a $50 bank-note on the Merchants and Manufacturers' Bank of Wheeling. And this fact is relied on as sustaining the inference that this was one of the notes remitted by Benedict in the purchase of the draft sent to him by the person calling himself Martin Smith. There is no proof, however, identifying this as one of the notes sent by Benedict. It will, however, be for the jury to give such weight to this evidence as it may be fairly entitled to. If the note exchanged by Faris, at the request of the defendant, was one of the notes sent in Benedict's letter addressed to Smith, it would undoubtedly be a fact strongly implicating the defendant, and which, unexplained, would be sufficient to warrant the inference of his guilt.

As to the fifth count of the indictment, charging defendant with having unlawfully and fraudulently taken Benedict's letter addressed to Martin Smith from the post-office at Beverly, to which it was directed, there seems to be no satisfactory evidence. Indeed, the only fact relied on to establish this charge is that before noticed, namely, that the defendant had the possession of a $50 Wheeling bank-note. For the reason already adverted to, the jury will no doubt hesitate in giving much weight to this fact.

The case is submitted to the jury, with the remark that it will be their duty to give the defendant the benefit of the evidence adduced by him to prove his previous good standing and character in the community in which he lived. Several respectable and intelligent witnesses have testified directly and positively to his good character, and their evidence on the point is not impeached or contradicted. It is also a fact brought to light by the evidence, that some months after this transaction, and when it was made known to the defendant that he was suspected of having stolen from the mail, though then in the distant state of Missouri, he immediately returned to his former residence in Ohio, and courted a full investigation of the charge.

This, with the proof of his good character, is entitled to the consideration of the jury, unless the evidence of guilt is so clear as to leave no reasonable doubt in their minds.

The jury returned a verdict of not guilty.

---

UNITED STATES (CROWELL v.). See Case No. 3,447.